Nash, C. J,
 

 Jesse- B. Reeves was the owner of an undivided moiety ©■£' a tract of land, lying in Ashe county, containing fifty acres. The- bill states that the plaintiffs, through their agent, Caswell Lea, on© of the plaintiffs, made a parol contract with Reeves, to purchase one half of his interest in the said tract, at $4000. The stipulations of the contract^
 
 *234
 
 as set out in the bill, were, that Reeves would lease to the plaintiffs, for the term of three years, all his said mineral interest in said tract of land, and they, within that term, would, by examination and mining, satisfactorily test the value of the said mine, after which he would convey to them in fee simple, an undivided half of his interest and right in the same, in consideration of these expenditures and services in the experiments done for testing, and the other half for $4000. The bill states the writing and execution should be postponed for a term not exceeding three weeks, at or before the expiration of which time, the execution of the contract by deed was to be done. The plaintiffs, in their bill, state that their agent Lea, having business in Grayson county, went there, and fell in with the defendant McKenzie', to whom he stated his contract with Reeves, and that McKenzie, without his knowledge, immediately came to Ashe county and proposed to Reeves that he should sell his interest in the land to him and his company, which Reeves refused to do, stating his contract with the plaintiffs, and to induce him to do so, fraudulently and falsely told him he had seen Lea in Grayson, and that he intended to give up his contract, and that he, Lea, was then actually on his return home to Tennessee. Influenced by these false and fraudulent representations, Reeves sold and conveyed to him, McKenzie, by deed, the premises in question, or his entire interest therein. The deed bears date 26th of April, 1854, before Lea returned from Grayson county. The bill alleges that the representations, by which the defendant McKenzie induced Reeves to sell to him and his company his interest in the lands, which he had previously contracted to sell to the plaintiff and his company, were utterly and entirely false. The bill alleges the willingness of Reeves still to comply with his contract with the plaintiffs, if he could, and that they have demanded from the defendants a conveyance of the interest so procured by them, proffering to pay all the expenses which they may have incurred, all of which they have refused. They pray that the defendants may be declared trustees for them ; that they may be decreed to reconvey
 
 *235
 
 to them; and for a general account. The lease mentioned in the contract is a lease for mining purposes, and by the act of 1844, Rev. Code, cli. 50, sec. 11, is void if not reduced to writing as a contract for an interest in land.
 

 The defendants have filed a general demurrer. The object of a general demurrer is to supersede the necessity of an answer, and when a defendant thinks that, upon the statement made in the bill, the plaintiff has shown no equity, a demurrer shortens the litigation, and brings the contest down to a single point. "When the bill fails to show that plaintiff has an equity, which a Court of Chancery can recognize, the defendant may avail himself of the defect upon the hearing, or as in this case, demur, which is the better course, as it relieves the Court from the labor of investigating the facts, as it confesses all the facts which are properly set forth in the bill. It submits, that on the plaintiff’s own showing, his claim is bad. Adams, 332. The defendants admit that the plaintiff Caswell Lea made with Reeves the contract set forth, and that they procured from Reeves, by false representations, the conveyance to themselves. The contest is narrowed down to the question, does the bill set forth any equity against the defendants ? ¥e are of opinion that it does not. In order to ascertain this fact, it is necessary to ascertain what equity is stated in the bill against Reeves; for if the plaintiffs could not compel Reeves to convey to them the premises, that is, if the contract was of such a nature that Equity cannot enforce it against him, neither can they enforce it against his assignee. The statute of frauds makes
 
 void
 
 all contracts for the sale of land and slaves, which are not evidenced by some instrument, in writing, signed by the party to be bound. Here, the whole of the contract stated in the bill is in parol, and further, it was a part of the agreement, that the execution of the necessary writings and conveyance should be postponed for three weeks. Against Reeves, then, the plaintiffs, by their own statement, have no equity to compel from him a conveyance. This is a principle so plain, and so repeatedly decided by this Court, and so familiar to the profession, as to need no author
 
 *236
 
 ity to be cited. Upon what then rests their equity against the defendants ? It is simply ujion the ground of the fraud practiced by them, or their agent, the defendant McKenzie, in procuring their conveyance. How does this fraud assist their equity
 
 \
 
 What right have they in a Court of Equity, which, ■has been injured by them in their purchase ? None whatever. They had no right which could be enforced against Reeves. They, therefore, have no right which could be recognized in this Court either against Reeves or the defendants.
 

 Per Curiam, The demurrer is sustained, and the bill dismissed.